IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| SIVAN SHEREE WALKER, *et al.*,     * | |
| Plaintiffs,     * | |
| vs.     * | CASE NO. 4:19-CV-58 (CDL) |
| ANTHONY DIXON, *et al.*,     * | |
| Defendants.     * | |

O R D E R

The elections supervisor for Marion County, Georgia pled guilty to child molestation and child cruelty under Georgia law. Plaintiffs, who are victims of the criminal conduct, now seek to make a federal case out of it by suing the supervisor and employees of the department of family and children services pursuant to 42 U.S.C. § 1983 for the violation of their federal constitutional rights. Because the elections supervisor was not acting under color of state law at the time of his egregious conduct, Plaintiffs fail to state a federal claim against him. Because the conduct of the employees of the department of family and children services does not amount to a constitutional violation, Plaintiffs fail to state a claim against them. Because Plaintiffs have abandoned their other federal claims and the Court declines to exercise supplemental jurisdiction over the remaining state law claims, this entire action is dismissed.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

Plaintiffs allege the following facts in support of their claims. The Court must accept these allegations as true for purposes of the pending motion.

Anthony Dixon maintained a polygamist compound in a secluded area of Taylor County, Georgia. He had three domestic partners, whom he called his wives, and more than twenty children. Sivan Walker was one of his domestic partners, and

2

they had eleven children together. Dixon also had twelve children with another domestic partner. Dixon "engaged in rampant abuse of his wives and children on the compound."[1] Compl. ¶ 18, ECF No. 1. In 2010, Dixon was reported to the Georgia Division of Family and Children Services ("DFCS") for recklessly driving a van with the door open and his son J.D. inside without a seatbelt, but DFCS did not investigate the report.[2] In 2012, Walker discovered that Dixon was sexually abusing one of his daughters, M.D.1, who was thirteen or fourteen years old at the time.[3] Walker confronted Dixon, but he told her that nothing happened. In 2013, Walker witnessed a second incident of sexual abuse involving a different young teenage daughter named M.D.2.[4] The child also reported to a teacher that she had been inappropriately touched by her father. DFCS did not investigate this report. And in 2014, Walker witnessed another incident of sexual abuse of M.D.1. She again confronted Dixon, but he told her that nothing happened and that if she told someone no one would believe her.

---

[1] Plaintiffs generally allege that all of Dixon's children were abused, but the only specific examples in the Complaint relate to children who are not plaintiffs in this action. Plaintiffs did not allege any specific facts regarding the abuse they suffered or when it occurred.
[2] J.D. is not a plaintiff in this action.
[3] M.D.1 is Dixon's biological daughter but not Walker's. She is not a plaintiff in this action.
[4] M.D.2 is Dixon's biological daughter but not Walker's. She is not a plaintiff in this action.

In January 2015, Walker fled the compound with her children and reported the 2014 M.D.1 incident to law enforcement officials. DFCS did not conduct a complete investigation into the report and closed the case as unsubstantiated. According to Plaintiffs, Dixon used the power of his office as Marion County Elections Supervisor to immunize himself from investigation, arrest, and prosecution. Compl. ¶¶ 8, 19, 97, 105, 115, 116. Plaintiffs assert that the DFCS officials responsible for investigating Dixon were compromised by their pre-existing friendship with him. *Id.* ¶ 87 (citing Tennison Dep. 18:22-19:18, ECF No. 20-1 (stating that DFCS employee Tennison was "loosely" friends with Dixon because she and Dixon had children who were the same age, that she knew him from serving on boards and committees in the community, and that a DFCS employee named Jones attended school with some of Dixon's older children)).

After Walker fled the compound with her children and reported Dixon's conduct, Dixon filed a petition for legitimation and custody of the children. That petition led to a bench trial. In his denial of the petition, the superior court judge found by clear and convincing evidence that Dixon "engaged in a pattern of sexual abuse of his minor daughters for several years" and that he "physically and emotionally abused his minor children" and "negligently cared for his minor children." Order Adopting Findings of Fact and Conclusions of

4

Law (Oct. 5, 2016) Ex. A, Findings of Fact and Conclusions of Law ¶ 154, ECF No. 1-1.[5] A criminal proceeding ensued. After the Georgia Bureau of Investigation began investigating Dixon in November 2016, a magistrate in Marion County refused to sign a warrant for the search of Dixon's property until after Dixon presided over an upcoming election. Compl. ¶ 97. The GBI continued its investigation, and in 2018 Dixon pleaded guilty to multiple counts of child molestation and cruelty to children.

Walker and seven of her children brought this action in 2019. Plaintiffs brought claims under 42 U.S.C. § 1983 for "Deprivation of Constitutional Rights" against DFCS employees Donna Tennison, Kalen Jones, Angelique Ludlam, and Bobby Cagle (Tennison, Jones, and Cagle are the "DFCS Defendants"; Ludlam is in default) based on their failure to investigate and address reports of Dixon's child abuse from 2010 to 2015.[6] Compl. ¶¶ 108-13. Plaintiffs also brought a claim under § 1983 for

---

[5] The Court observes that the deposition and state judge findings referenced in this order were included in the Plaintiffs' Complaint, and therefore, may be considered in ruling upon Defendants' motion to dismiss.

[6] Plaintiffs brought claims against the DFCS Defendants in their individual and official capacities. The official capacity claims are construed as claims against the individuals' employers—Georgia DFCS and Marion County DFCS, which are part of the Georgia Department of Human Services. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Plaintiffs dismissed their claims against Georgia DFCS and Marion County DFCS, so the Court also considers the official capacity claims against Tennison, Jones, Ludlam, and Cagle to be dismissed.

5

"Deprivation of Constitutional Rights" against Dixon in his official and individual capacities and the Marion County Elections Supervisor based on Dixon's abuse of his children.[7] Compl. ¶¶ 115-18. The § 1983 claims are all asserted as substantive due process claims under the Fourteenth Amendment. Plaintiffs also contend that Defendants conspired to violate their civil rights. Plaintiffs brought claims against all Defendants under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. In addition to these federal claims, Plaintiffs allege state law claims against Dixon in his individual capacity for battery, intentional infliction of emotional distress, and civil RICO. Defendants seek dismissal of all the federal claims.

---

[7] The Marion County Elections Supervisor is an employee of the Marion County board of elections and registration. *See* Act to Create Board of Elections & Registration for Marion County § 4, 2003 Ga. Laws 4474, 4476, http://dlg.galileo.usg.edu/cgi/ggpd?query=ca:%20%28ga%201407%29 (2003 session laws vol. 2 book 2). Plaintiffs did not sue the elections board or Marion County, whose board of commissioners appointed the elections board. It is not clear to the Court that the office of Marion County Elections Supervisor is a separate entity capable of being sued. *Cf. Lovelace v. Dekalb Cent. Prob.*, 144 F. App'x 793, 795 (11th Cir. 2005) (per curiam) (finding no error in dismissal of claims against a county police department because it was not a legal entity separate from the county and subject to suit). But none of the parties raised this issue in their briefs, so the Court does not dismiss the claims against the office of Marion County Elections Supervisor on this ground.

DISCUSSION

I. **Plaintiffs' § 1983 Claims**

A. <u>Did Dixon Act Under Color of State Law?</u>

No one disputes the egregious nature of Dixon's conduct. But not all bad conduct amounts to a violation of the United States Constitution or gives rise to a federal cause of action. Plaintiffs rely upon § 1983 to remedy the alleged constitutional violations. Section 1983 seeks to prevent the misuse "of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1268 (11th Cir. 2012) (quoting *Dunwoody Homeowners Ass'n, Inc. v. DeKalb Cty.*, 887 F.2d 1455, 1460 (11th Cir. 1989)). But, § 1983 "does not federalize all torts or other deprivations of rights committed by a person who is a . . . government agent." *Id.* at 1265. "A successful section 1983 action requires that the plaintiff show she was deprived of a federal right by a person acting *under color of state law*." *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997) (emphasis added). Although Dixon was employed as the Marion County Elections Supervisor at the time he engaged in the abusive conduct, Plaintiffs alleged no facts that would support the conclusion that he was acting under color of state law at the relevant time.

7

To be liable under § 1983, an official must abuse the power and authority given to him by the state. "Not all acts by state employees are acts under color of law." *Id.* "The traditional definition of acting under color of state law requires that the defendant in a [section] 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (alteration in original) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). "'A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state,' . . . or when 'the manner of his conduct . . . makes clear that he was asserting the authority granted him and not acting in the role of a private person.'" *Id.* at 1329-30 (second alteration in original) (first quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001), then *Williams v. United States*, 341 U.S. 97, 100 (1951)). "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Id.* at 1330 (quoting *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995)). The "'acts of officers in the ambit of their personal pursuits' are not done under color of law." *Id.* at 1329 (quoting *Screws v. United States*, 325 U.S. 91, 111, (1945)).

When a state employee uses the authority of his office to create an opportunity for harming someone, he may be found to have acted under color of state law. *See Griffin*, 261 F.3d at 1304 (finding that a city manager invoked his authority "to create the opportunity to be alone with [the plaintiff], to take her home, and then to rape her"). But if the employee does not use the authority of his office, he is not acting under color of state law. In *Almand,* for example, the Eleventh Circuit concluded that a police officer did not act under color of state law when he used his physical strength, not his authority as a police officer, to break into the plaintiff's apartment and rape her. 103 F.3d at 1515. Similarly, in *Myers*, a county magistrate did not act under color of state law and cause a false arrest when he reported that his daughter's ex-fiancé stole his dog, even though he did it on a government-issued communications device. 713 F.3d at 1332, 1330-31. In reporting the theft, the magistrate acted as a private individual and not "in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 1330 (quoting *West*, 487 U.S. at 50). The incident arose as part of "a private dispute and not a matter that was before [the magistrate] in his official capacity as a magistrate judge." *Id.* Finally, in *Butler*, a county corrections officer did not act under color of state law when she came home from work, still in uniform, to

9

find her daughter's naked paramour hiding in her daughter's closet and then handcuffed him (using her work handcuffs), held him at gunpoint (using her work pistol), and threatened to kill him if he did not obey her commands. 685 F.3d at 1267-68. Rather, she "was acting as an enraged parent" and "did not use her position and authority to plan the detention and assault of the victim." *Id.* at 1267-69 (noting that any "other angry parent with a firearm in the house could have done" the same thing).

This case is more akin to *Myers*, *Butler*, and *Almand* than it is to *Griffin*. Here, Plaintiffs alleged no facts to suggest that Dixon acted pursuant to the power he possessed by virtue of state authority when he abused his family members. Simply put, what Dixon did to his family members—however egregious—was not made possible because he was clothed with the authority of state law as a county elections supervisor. And, Plaintiffs alleged no facts to suggest that that Dixon acted pursuant to his power as elections supervisor when he allegedly obstructed the abuse investigations. Plaintiffs concede that they are not challenging Dixon's conduct related to his official duties, such as publishing election notices, selecting and equipping polling places, appointing poll officers and instructing them in their duties, overseeing elections, receiving and calculating election returns, and reporting election results. *See* O.C.G.A. § 21-2-70 (listing duties of a county's chief election official). And,

10

there is nothing in the Complaint to suggest that the DFCS employees who mishandled the abuse reports were influenced by Dixon's exercise of his official duties.[8] Rather, Plaintiffs' theory is that Dixon's general standing in the Marion County community affected the DFCS workers' handling of the case because they knew him and considered him to be a friend and thus did not follow all of the procedures that might have led to earlier exposure of and remedies for Dixon's abuse. There are no factual allegations to suggest that Dixon achieved the obstruction by abusing his position as elections supervisor.

In summary, the Complaint does not contain factual allegations to support an inference that Dixon acted under color of state law when he engaged in any of the conduct Plaintiffs rely upon in support of their § 1983 claims. Thus, the Complaint fails to state a § 1983 claim against Dixon. The Court recognizes that Dixon did not move to dismiss the individual capacity § 1983 claims against him, but since Plaintiffs did not adequately allege that Dixon acted under color of state law, the

---

[8] Plaintiffs do allege that during the GBI investigation, which began in late 2016 after Dixon's petition for legitimation and custody was denied, a Marion County magistrate refused to sign a search warrant until after Dixon presided over an election. Compl. ¶ 97. Even if it were fair to infer from this allegation that Dixon coerced the magistrate to take this action based on some sort of threat related to Dixon's official duties, there is nothing in the Complaint to suggest that it caused any of Plaintiffs' injuries because they had left Dixon's compound more than a year before and the GBI pressed forward with its investigation, resulting in Dixon's indictment, conviction, and incarceration.

individual capacity § 1983 claims must be dismissed along with the official capacity ones.

### B. Did the DFCS Defendants Violate Plaintiffs' Constitutional Rights?

Plaintiffs claim that even if Dixon did not act under color of law to deprive them of their rights, the DFCS Defendants did. Plaintiffs brought individual capacity § 1983 claims against the DFCS Defendants, arguing that they violated Plaintiffs' substantive due process rights by failing to investigate adequately the three reports of abuse DFCS received regarding Dixon's abuse of children who are not plaintiffs in this action. The Complaint is short on details regarding each DFCS Defendant's involvement in this matter, but the gist is that the DFCS Defendants did a bad job of investigating the reports against Dixon, did a poor job of supervising the DFCS employees who investigated the reports against Dixon, or both. Plaintiffs allege that the DFCS Defendants mishandled the investigations because of Dixon's standing in the community, but there is no allegation that any of the DFCS Defendants knew what Dixon was doing and intentionally suppressed the investigations.

The Fourteenth Amendment's Due Process Clause "was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003)

12

(quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Plaintiffs invoke substantive due process, arguing that the DFCS Defendants were obligated to protect them under the circumstances. "But the Fourteenth Amendment must not be used through section 1983 as a 'font of tort law' to convert state tort claims into federal causes of action." *Id.* "Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).

In *DeShaney*, for example, child protective services employees suspected that Joshua DeShaney's father might be abusing him, but they recommended that Joshua remain in the father's custody subject to protective measures. 489 U.S. at 192. Although caseworkers observed suspicious injuries on Joshua during monthly home visits, believed that someone was physically abusing him, were alerted twice by emergency room personnel that Joshua had been treated for injuries caused by suspected child abuse, and were twice told that Joshua was too ill to see a caseworker during a home visit, child protective services did nothing. *Id.* at 192-93. Then, the father beat

Joshua so badly that "he suffered brain damage so severe that he [was] expected to spend the rest of his life confined to an institution for the profoundly retarded." Joshua and his mother brought a § 1983 action against the child protective services agency and several of its employees for violating Joshua's substantive due process rights. *Id.* at 193. The Supreme Court recognized that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals," such as prisoners and involuntarily committed mental patients in the State's custody. *Id.* at 198. But the Supreme Court concluded that because Joshua did not suffer abuse at the hands of the State or while he was in State custody, "the State had no constitutional duty to protect Joshua against his father's violence"—even if "the State may have been aware of the dangers that Joshua faced." *Id.* at 201-02.[9] *Cf. Doe v. Braddy*, 673 F.3d 1313, 1318-19 (11th Cir. 2012) (concluding that it was not clearly established that DFCS workers' failure to notify adoptive parents of an adoptive child's history of sexually inappropriate behavior would violate the substantive due process rights of another child living in the home whom the adoptive child abused).

---

[9] The Supreme Court noted that by undertaking to protect Joshua, the child protective services caseworkers may have acquired a *state law* duty to Joshua that could be enforced in *state court*.

*DeShaney* is squarely on point. Under its rationale, Plaintiffs cannot bring a substantive due process claim against the DFCS Defendants based on their mishandling of the reports they received about Dixon. Plaintiffs argue that *DeShaney* does not apply because Dixon was a state actor when he abused his family members.[10] But, as discussed above, Dixon did not act under color of state law when he engaged in the conduct that gave rise to this action, which means that he was not a state actor. *See Butler*, 685 F.3d at 1265 n.5 ("The terms 'under color of state law' and 'state action' refer to the same kind of conduct in the context of a § 1983 claim; an official who has acted under color of state law has engaged in state action.").[11]

---

[10] Plaintiffs rely on *Range v. Douglas*, 763 F.3d 573 (6th Cir. 2014), in which the Sixth Circuit concluded that the *DeShaney* rule did not apply because *Range* involved only state actors: a county morgue attendant who sexually abused a number of corpses while he was drunk or high on drugs, his supervisor, and the coroner. *Id.* at 589 n.7. Although the *Range* plaintiffs accused the supervisor and coroner of violating their substantive due process rights by supervising the attendant in a deliberately indifferent manner, the Sixth Circuit ultimately concluded that the supervisor and coroner *did not* violate the plaintiffs' clearly established rights because there was no evidence that they "were aware of facts from which they could infer a substantial risk of the kind of serious harm that occurred here, that they did infer it, and that they acted with indifference toward the rights of the families involved." *Id.* at 591.

[11] The Court observes that even if Plaintiffs alleged a substantive due process violation, the DFCS Defendants would be entitled to qualified immunity as to Plaintiffs' damages claims against them in their individual capacities. *See Braddy*, 673 F.3d at 1318-19 (concluding that state social workers were entitled to qualified immunity because it was not clearly established that their failure to notify adoptive parents of an adoptive child's history of sexually inappropriate behavior would violate the substantive due process rights of another child living in the home whom the adoptive child abused).

15

Plaintiffs also argue that the DFCS Defendants committed constitutional violations when they "conspired" with Dixon to violate Plaintiffs' constitutional rights.[12] But there cannot be § 1983 liability for such a conspiracy without an underlying violation of constitutional rights. Dixon was not a state actor when he abused his family members, so his abusive conduct was not a constitutional violation. And Plaintiffs do not allege facts to suggest that the DFCS Defendants independently violated Plaintiffs' constitutional rights. "[I]f the plaintiff alleging the rights violation is in no custodial relationship with the state, then state officials can violate the plaintiff's substantive due process rights only when the officials cause harm by engaging in conduct that is 'arbitrary, or conscious shocking, in a constitutional sense.'" *Braddy*, 673 F.3d at 1318 (quoting *White v. Lemacks*, 183 F.3d 1253, 1259 (11th Cir. 1999)). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* (alteration

---

[12] Plaintiffs point out that "[c]onspiring to violate another person's constitutional rights" violates § 1983. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). *Rowe* is off point. In the section of *Rowe* relied on by Plaintiffs, the relevant question was whether the plaintiff's ex-wife, a private citizen, could be held liable under § 1983 based on her alleged participation in a "conspiracy [with state actors] whose goal was to wrongfully convict [the plaintiff] of sexually abusing his daughter." Id. at 1276. Since there was no evidence that the ex-wife knew about the alleged conspiracy between the state actors, much less agreed to it, she could not be held liable under § 1983. Here, the relevant question is whether state actors may be held liable for a substantive due process violation based on their failure to adequately investigate abuse allegations against a private citizen.

16

in original) (quoting *Lewis*, 523 U.S. at 846). This "standard 'is to be narrowly interpreted and applied,' . . . such that 'even intentional wrongs seldom violate the Due Process Clause.'" *Id.* (first quoting *White*, 183 F.3d at 1259, then quoting *Waddell*, 329 F.3d at 1305). "To act with deliberate indifference, a state actor must know of and disregard an excessive—that is, an extremely great—risk to the victim's health or safety." *Waddell*, 329 F.3d at 1306-07 (finding no substantive due process violation based on a jail official's early release of an inmate or the sheriff's decision to use the former inmate as a confidential informant).

Here, Plaintiffs allege that the DFCS Defendants inadequately investigated three reports of abuse, including one that was made after Plaintiffs fled Dixon's compound. There is no allegation that any of the DFCS Defendants knew about Dixon's abusive conduct or intentionally participated in covering it up. Accordingly, the Complaint's factual allegations do not support a substantive due process claim against the DFCS Defendants, and the claims against Tennison, Jones, and Cagle are dismissed.[13]

The Court recognizes that Ludlam is in default. A defendant, by her "default, admits the plaintiff's well-pleaded allegations of fact." *Eagle Hosp. Physicians, LLC v. SRG*

---

[13] As noted *supra* note 11, qualified immunity would protect the DFCS Defendants from any damages claims against them in their individual capacities.

17

*Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). But, a "defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. The defendant is not held "to admit conclusions of law." *Id.* As discussed above, the factual allegations in the Complaint do not support a § 1983 action against the DFCS Defendants who responded to the Complaint. For the same reasons, they do not support a § 1983 claim against Ludlam, who is accused of the same failings as the DFCS Defendants. The § 1983 claims against Ludlam are dismissed, and Plaintiffs' motion for default judgment (ECF No. 23) is denied.

**II. Plaintiffs' Federal RICO Claim**

In addition to their § 1983 claims, Plaintiffs brought claims under the federal RICO laws. "Any person injured in his business or property by reason of a violation of" 18 U.S.C. § 1962 may bring an action under the federal RICO laws. 18 U.S.C. § 1964(c). It is a violation of § 1962 to invest the proceeds of income derived from a pattern of racketeering activity in an enterprise that affects interstate commerce, 18 U.S.C. § 1962(a); to control an enterprise that affects interstate commerce through a pattern of racketeering activity,

18

18 U.S.C. § 1962(b); to conduct or participate in the affairs of an enterprise that affects interstate commerce through a pattern of racketeering activity, 18 U.S.C. § 1962(c);, or to conspire to violate any of the three substantive provisions of RICO, 18 U.S.C. § 1962(d). In their motions to dismiss, Defendants pointed out that Plaintiffs did not allege any facts to suggest that any enterprise maintained by Defendants engaged in or affected interstate commerce, and Plaintiffs did not allege facts to suggest that they were injured in their business or property by reason of a federal RICO violation.[14] Plaintiffs did not respond to these arguments and instead stated that they did not oppose dismissal of all of their federal RICO claims except those against the two Defendants who did not file motions to dismiss—Dixon and Ludlam. To the extent that Plaintiffs have not abandoned their federal RICO claims against Dixon and Ludlam, the Court nevertheless finds that Plaintiffs have not stated a claim under RICO against any of the Defendants, including Dixon and Ludlam. Based on the Court's review, the present Complaint fails to allege the elements of a federal RICO

---

[14] Plaintiffs claim that because of Dixon's abuse, they suffered emotional trauma that affects their ability to learn and work, but this sort of emotional distress is not recoverable under federal RICO. *See Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988) ("In our view, the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom.").

private civil action, and all of Plaintiffs' federal RICO claims are therefore dismissed.

CONCLUSION

For the reasons set forth above, even taking Plaintiffs' allegations as true, Plaintiffs' Complaint fails to state a § 1983 claim against any Defendant. It also fails to state a federal RICO claim. Accordingly, all of Plaintiffs' § 1983 and federal RICO claims are dismissed. Those federal question claims provided the basis for subject matter jurisdiction in this Court; the only claims remaining are under state law and do not present a federal question. The Court declines to exercise supplemental jurisdiction over the state law claims, which are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED, this 13th day of January, 2020.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA